## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HARRY WINSTON INC. | ) | |
| 718 Fifth Avenue | ) | |
| New York, NY 10019, | ) | Case No.: |
| | ) | |
| Plaintiff, | ) | Judge: |
| | ) | |
| v. | ) | Magistrate Judge: |
| | ) | |
| MUNTASER ALKAHTIB, A/K/A MATT KAHTIB | ) | |
| d/b/a  M.K. Winston Jewelers | ) | |
| 11 State Street | ) | |
| Newburyport, MA 01950 | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR
## COMPETITION, PASSING OFF AND DILUTION

Plaintiff Harry Winston Inc. ("Harry Winston" or "Plaintiff"), by and through

undersigned counsel, for its Complaint against Defendant Muntaser Alkahtib, aka Matt Kahtib,

d/b/a M.K. Winston Jewelers ("Defendant"), states as follows:

1.      This is an action for trademark infringement under the Lanham Act, 15 U.S.C. §

1114, unfair competition, passing off, and false designation of origin under the Lanham Act, 15

U.S.C. § 1125(a) and dilution under the Lanham Act, 15 U.S.C. § 1125(c), arising from

Defendant's unauthorized use of Plaintiff's world-famous trademark Winston to operate a retail

jewelry store.

### Parties

2.      Plaintiff Harry Winston Inc. ("HWI") is a New York corporation with a principal

place of business at 718 Fifth Avenue, New York, New York 10019. For more than 80 years,

HWI has been engaged in the business of design, manufacture, distribution and sale of fine jewelry of exceptional quality and workmanship.

3.       Upon information and belief, Defendant is an individual who operates a jewelry store called M.K. Winston Jewelers with its principal place of business at 11 State Street, Newburyport, Massachusetts 01950.

## Jurisdiction and Venue

4.       This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b). Personal jurisdiction in this District is proper inasmuch as Defendant conducts business within this jurisdiction. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2).

## Facts
## The Fame of Harry Winston and the WINSTON Trademarks

5.       There are few names more famous and renowned in the world of fine jewelry than Harry Winston, and few trademarks more widely-recognized for jewelry than the Winston and Harry Winston trademarks. Founded by Harry Winston in 1932, Harry Winston Inc. invented modern couture jewelry as it exists today. The Winston reputation was built on unparalleled quality and exquisite design that emphasized the beauty of the stones, specifically diamonds, and fine craftsmanship.  Harry Winston was known as the "King of Diamonds".  In 2006, Harry Winston Inc. was acquired by Aber Diamond Corporation, which has changed its corporate name to Harry Winston Diamond Corporation.  Harry Winston Diamond Corporation is a publicly traded company on the New York Stock Exchange.

6.       Over the years, Harry Winston became known as the "King of Diamonds," and was renowned for doing business with royalty, famous families (such as the Rockefellers) and countless Hollywood stars. Although the prices of some original and one-of-a-kind Harry

4633257v1

Winston jewelry creations often range in the millions of dollars, the Winston name has become well-known to the general public through its promotions at functions such as the annual Academy Awards of Motion Picture Arts and Sciences ("Oscars"), where for many years Harry Winston, Inc. has loaned millions of dollars' worth of jewels to the celebrity attendees.  For the 2012 Academy Awards, held on February 26, 2012, Harry Winston loaned more than $5 million in jewels to such well-known stars as Jessica Chastain and Natalie Portman.  *See* http://news.instyle.com/2012/02/27/harry-winston-oscars-2012-jewelry.

7.      As far back as 1953, Marilyn Monroe immortalized the Harry Winston trademark in the movie "Gentlemen Prefer Blondes" by singing the lyrics "Talk to me Harry Winston, Tell Me All About It," in the song "Diamonds Are A Girl's Best Friend."

8.      In addition to the design and manufacture of fine jewelry, Harry Winston was also well-known for acquiring important gemstones.  Over the years, the House of Harry Winston has held more of the world's most famous jewels than any entity other than the British Crown, including the 337-carat Catherine the Great sapphire and the 95-carat Star of the East diamond. In 1949, Harry Winston acquired the most famous gem in the world, the 46-carat Hope diamond. In 1958, he donated the Hope diamond to the Smithsonian Institution, where it remains today in the Winston Gallery.

9.      Harry Winston is also well known for its unique and highly desirable diamond engagement rings and wedding bands.  Many celebrities, including Jennifer Lopez and Katie Holmes, have worn Harry Winston engagement rings, and the Winston name is so synonymous with weddings and romance that it was the inspiration for the title of the New York Times bestseller "Chasing Harry Winston", with a cover that features photographs of Winston-style engagement rings.

4633257v1



A significant portion of the harrywinston.com website is devoted to engagement jewelry.

See Exhibit A.

10.     Plaintiffs are the owners of the trademarks "Winston" and "Harry Winston," all common law rights relating to the use of those marks, the United States Trademark Registrations thereof, and the goodwill symbolized by the trademarks and the registrations thereof for a variety of goods and services, including the following:

    a.  WINSTON - Registration No. 848,629, Registered May 7, 1968, jewelry and polished diamonds;

    b.  HARRY WINSTON - Registration No. 3,355,622, Registered December 18, 2007, jewelry and watches, namely, bracelets, earrings, rings, brooches, pendants, polished diamonds, precious and semiprecious gemstones, wrist-watches, pocket-watches, clocks, watch-bracelets, bracelets-fasteners, watch-cases and watch-movements;

4



c.  Registration No. 1,929,448, Registered October 24, 1995 for jewelry;

d.  HARRY WINSTON DIAMOND – Registration No. 3,787,850, Registered May 11, 2010 for diamonds and rough diamonds;

e.  HARRY WINSTON – Registration No. 3,616,973, Registered May 9, 2009 for retail store services specializing in the sale of diamonds and rough diamonds;



f.  - Registration No. 1,747,040, Registered January 19, 1993, jewelry, [sic] namely, crowns, necklaces, sets of jewels, brooches, bracelets, rings, earrings, cufflinks; horological and chronometric instruments; namely, write-watches, pocket watches, table watches, clocks, alarm-clocks, watch bracelets, bracelet fasteners, watch cases; jewel cases in precious metals, precious and semi-precious stones;

All of the above, including the common law rights therein, are collectively referred to as the "Winston Marks.) A photocopy of registration numbers 848,629, 3,355,622, 1,929,448, 3,787,850, 3,616,973 and 1,747,040 are attached hereto as Exhibit B.

11.  The registrations identified in paragraph 10 are valid and subsisting and record title is in Plaintiff; the Certificates of Registration are *prima facie* evidence of the validity of the registrations, the Plaintiff's ownership of the Winston Marks, and of the Plaintiff's exclusive right to use the Winston Marks in commerce in connection with the goods and services specified in the Certificates of Registration under the provisions of 15 U.S.C. § 1057(b) and constructive

4633257v1

notice of the Plaintiff's claim of ownership under 15 U.S.C. § 1072. Registration Nos. 848,629, 1,929,448 and 1,747,040 are incontestable, which provides conclusive evidence of the validity of the registrations, the Plaintiff's ownership of the Winston Marks, and of the Plaintiff's exclusive right to use the Winston Marks in commerce in connection with the goods and services specified in the Certificates of Registration under the provisions of 15 U.S.C. § 1115(b).

12.     The Winston Marks have been extensively and continually used, promoted and advertised by Plaintiff within the United States and worldwide for more than eighty (80) years for fine jewelry and related products.

13.     Substantial amounts of time, effort and money have been expended over those years in ensuring that the general public associates such marks exclusively with Plaintiff and its products.  In the past five years alone, Plaintiff has expended in excess of $150 million dollars in marketing, advertising and promoting goods and services using their trademarks.

14.     The Winston Marks on fine jewelry have acquired a worldwide recognition by virtue of Plaintiff's use and efforts to promote and expand the use of the Winston Marks, and through Plaintiff's vigilance in policing the use of the Winston Marks.

15.     The Winston Marks have acquired an extraordinary degree of consumer recognition in the minds of the public, and are now famous and serve uniquely to identify products and services provided by Harry Winston.

16.     Harry Winston strictly controls all uses of the Winston Marks.

**Defendant's Wrongful Acts**

17.     Defendant operates a retail jewelry store in Newburyport, Massachusetts under the name M.K. Winston Jewelers.  On its website at www.mkwinston.com, Defendant features

images of weddings and engagement rings and offers custom design services.  Defendant's logo

prominently displays a capital "W" in a typeface that is very similar to the famous HW logo:





18.     In 2011, Plaintiff became aware of Defendant's use of the Winston trademark on

a retail jewelry store and on November 16, 2011, counsel for Harry Winston wrote to Khatib

demanding that it change the name of its jewelry store.  Defendant's counsel responded on

December 23, 2011 in a letter in which he acknowledged that Defendant's name was not

Winston, but stated that "the name Winston is included in my client's mark in homage to

Winston K. Sherman, grandfather to Karyn Khatib and United States World War II Veteran."

To date, Defendant has refused to change the name of its jewelry store.

**First Cause Of Action**
**Federal Trademark Infringement**

19.     Plaintiff realleges and incorporates by reference herein the allegations contained

in paragraphs 1 through 18 of the Complaint.

20.     Defendant's aforementioned acts constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

21.     Plaintiff's federal registrations on the Principal Register for the marks WINSTON - Registration No. 848,629 and HW HARRY WINSTON – Registration No. 1,747,040 are incontestable, which provides conclusive evidence of the validity of the registrations, the Plaintiff's ownership of the Winston Marks, and of the Plaintiff's exclusive right to use the Winston Marks in commerce in connection with the goods and services specified in the Certificates of Registration under the provisions of 15 U.S.C. §1115(b)).

22.     Defendant's wrongful use of the "Winston" name on a retail jewelry store is likely to cause confusion as to sponsorship or authorization by Plaintiff.  Defendant's actions constitute willful trademark infringement in violation of section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

23.     As a proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer great damage to its business, goodwill, reputation, profits and the strength of the Winston Marks.  The injury to Plaintiff is and continues to be ongoing and irreparable.  An award of monetary damages alone cannot fully compensate Plaintiff for these injuries and Plaintiff lacks an adequate remedy at law.

24.     The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

25.     Plaintiff is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorneys' fees.

4633257v1

## Second Cause of Action
## Federal Unfair Competition, False Designation
## of Origin, and Passing Off

26.     Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 25 of the Complaint.

27.      Because of Defendant's efforts to both associate its diamond engagement ring products with the luxury and reputation of the Harry Winston brand and its fame for high quality diamonds, as well as Defendant's wrongful use of the Winston Marks, consumers are falsely led to believe that Defendant's retail jewelry store is associated with, endorsed by or are sponsored, or otherwise approved by Plaintiff, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

28.     The foregoing acts and conduct by Defendant constitutes false designation of origin and passing off in connection with products and services distributed in interstate commerce, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

29.     Defendant's acts, as set forth above, have caused irreparable injury to Plaintiff's goodwill and reputation.  The injury to Plaintiff is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Plaintiff for its injuries and Plaintiff lacks an adequate remedy at law.

30.     Plaintiff is entitled to a preliminary and permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorneys' fees.

4633257v1

**Third Cause of Action**
**Trademark Dilution under Massachusetts Law**

31.     Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 30 of the Complaint.

32.     Plaintiff's name and the Winston Marks have achieved a distinctive quality as source indicators of Plaintiff's goods and services in Massachusetts.

33.     Defendant's use of the "Winston" name on a retail jewelry store is likely to injure Plaintiff's business reputation and/or dilute the distinctive quality of Plaintiff's Winston Marks, in violation of Mass. G.L. c. 110H, § 13.

**Fourth Cause of Action**
**Violation of Mass. G.L.  c. 93A**

34.     Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 33 of the Complaint.

35.     Defendant is engaged in the conduct of trade or commerce within the meaning of Mass. G.L. c. 93A.

36.     Defendant's acts occurred primarily and substantially within the Commonwealth of Massachusetts.

37.     Defendant's use of the Winston Marks constitutes an unfair method of competition and an unfair or deceptive act or practice in the conduct of  trade or commerce, in violation of Mass. G.L. c. 93A, § 2.

38.     Plaintiff has been and is being damaged by said acts of Defendant.

4633257v1

**Fifth Cause of Action**
**Common Law Trademark Infringement and Unfair Competition**

39.     Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 38 of the Complaint.

40.     Plaintiff's Winston Marks are distinctive of Plaintiff's goods and services, and the public has come to recognize the Winston Marks as identifying Plaintiff as the source of high quality jewelry and retail jewelry store services.

41.     In view of the association by the public of the Winston Marks with Plaintiff and its products and services, Defendant's use of the "Winston" name on its retail jewelry store is bound to cause confusion, mistake, and deception of the relevant public as to whether Defendant's goods and services emanate from, or are licensed or approved by, Plaintiff.

42.     Defendant's conduct complained of herein constitutes common law trademark infringement and unfair competition.  Said conduct has damaged and will continue to damage irreparably Plaintiff's valuable goodwill unless enjoined by this court.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1)     that Defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant who receive actual notice of the court's order by personal service or otherwise, be permanently and immediately enjoined from:

(a)  doing any act or thing likely to induce the belief that Defendant's businesses, services or products are in any way connected with, sponsored, affiliated, licensed, or endorsed by Plaintiff;

(b) using any signs and other indicia on or near Defendant's  premises that use the Winston Marks and, for a period of six months, require that all employees or agents of Defendant answering the telephone specifically state upon answering the telephone that Defendant is not connected or associated with Winston;

(c)  operating a retail jewelry store or website using the name "Winston" (alone or with any other term or design) or "Harry Winston";

11

(d)   using the term "Winston" in any advertising, marketing and promoting of Defendant's jewelry store services;

(e)   using the Winston Marks in any manner and in any media, including on any Facebook page, Twitter account and any other social media account, to advertise, promote or sell jewelry products;

(f)   using the Winston Marks, or any other marks that are deceptively similar to the Winston name or marks in connection with a website or as metatags, director names, other computer addresses, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Harry Winston, Inc. with Defendant; and

(h)   Surrender and/or request the cancellation of all assumed and fictitious business name certificates containing the term "Winston" from the appropriate issuing authorities.

(2)   that Defendant is further ordered:

(a) to actively and immediately undertake, via search engine optimization or other means, to remove all references to the its "M.K. Winston" retail jewelry business from the internet;

(b) to immediately surrender to Plaintiff's agents all copies of any materials mentioning jewelry products and jewelry retail store services that it has created or obtained bearing the Winston Marks for destruction, and that it be enjoined from creating, purchasing or acquiring such materials in the future or placing them on a website;

(c) to immediately call, and then immediately follow such call with an appropriate confirming letter, to the business office of: (i) all telephone companies with which Defendants have current telephone service under the name Winston and (ii) telephone directory listings under the name Winston (both paper and electronic); and request all said companies to immediately change the name of the listing to a name that does not include Winston.

(3)   that Defendant, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Plaintiffs within thirty (30) days after service of the permanent injunction a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the permanent injunction;

(4)     that Plaintiff recover its actual damages sustained as a result of Defendant's wrongful actions;

(5)     that the Court treble the amount of said damages as provided by Mass. G.L. c. 93A, § 11;

(6)     that Plaintiff recover Defendant's profits made as a result of Defendant's wrongful actions;

(7)     that Plaintiff recover three (3) times Defendant's profits made as a result of Defendant's wrongful actions or three (3) times Plaintiff's damages, whichever is greater;

(8)      that this case be deemed an exceptional case under 15 U.S.C. §§ 1117(a) and (b) and that Defendant be deemed  liable for and ordered to reimburse Plaintiff for its reasonable attorneys' fees;

(9)     that Plaintiff be awarded exemplary damages for Defendant's willful and intentional acts;

(10)    that Plaintiff recover their costs of court; and

(11)    that Plaintiff recover such further relief to which it may be entitled.


Dated:  August 2, 2012                          Respectfully submitted,

                                                /s/ John L. Welch_____
                                                John L. Welch (BBO# 522040)
                                                Juliet J. DeFrancisco (BBO# 682234)
                                                LANDO & ANASTASI, LLP
                                                Riverfront Office Park
                                                One Main Street – 11th Floor
                                                Cambridge, MA 02142
                                                T: (617) 395-7000
                                                F: (617) 395-7070
                                                JWelch@LALaw.com
                                                JDeFrancisco@LALaw.com

OF COUNSEL:

Joseph R. Dreitler
Mary R. True
DREITLER TRUE LLC
137 E. State Street
Columbus, OH 43215
Telephone: (614) 545-6354
Facsimile:  (614) 241-2169
jdreitler@ustrademarklawyer.com
mtrue@ustrademarklawyer.com

*Attorneys for Plaintiff, Harry Winston Inc.*